■ NELSON LEBRON, Respondent, v SML VETERAN LEATHER, LLC, Appellant. [971 NYS2d 82]—

Order, Supreme Court, Bronx County (Norma Ruiz, J.), entered April 4, 2012, which denied defendant's motion for summary judgment dismissing the complaint, reversed, on the law, without costs, and the motion granted. The Clerk is directed to enter judgment accordingly.

In construing a statute of another state, we are bound to follow the construction which the courts of that state have given it, particularly where, as here, the highest court of that state has interpreted the statute (McKinney's Cons Laws of NY, Book 1, Statutes § 261).

The New Jersey Workers' Compensation Act provides the exclusive remedy for recovery of damages as a result of an accidental injury which is sustained during the course of employment (*see Tomeo v Thomas Whitesell Constr. Co., Inc.*, 176 NJ

366, 823 A2d 769 [2003]), unless there was conduct on the part of the employer that amounts to an "intentional wrong" (NJ Stat Ann § 34:15-8).

The seminal case in defining the term "intentional wrong" is *Millison v E.I. du Pont de Nemours & Co.* (101 NJ 161, 501 A2d 505 [1985]). There, defendant corporation, through some of its corporate officers and medical staff, engaged in purposeful deception and the concealment of health risks involving asbestos exposure. This deception included, inter alia, concealment of diseases already developed in employees, by means of conducting medical exams and fraudulently advising employees that they were disease free. Focusing on the type of employer conduct that would be "so egregious as to constitute an 'intentional wrong'" and thus take a case out of the exclusivity provisions of the statute (*Millison*, 101 NJ at 177, 501 A2d at 514), the New Jersey Supreme Court undertook an extensive analysis of the statute's purpose and legislative intent. In order to satisfy the intentional wrong standard, two related components are required: (1) there must be a "substantial certainty" that the employer's conduct will cause injury or death; (2) such conduct must be viewed in the context of industry reality, i.e., whether the injury may "fairly be viewed as a fact of life of industrial employment, or is it rather plainly beyond anything the legislature could have contemplated as entitling the employee to recover *only* under the Compensation Act" (*Millison*, 101 NJ at 179, 501 A2d at 514).

The court warned that "the dividing line between negligent or reckless conduct on the one hand and intentional wrong on the other must be drawn with caution, so that the statutory framework of the Act is not circumvented simply because a known risk later blossoms into reality." (*Millison*, 101 NJ at 178, 501 A2d at 514.)

Applying the two-prong test to the facts in *Millison*, the court determined that the count of the complaint seeking damages for plaintiffs' initial work-related occupational diseases must be dismissed as precluded by the Workers' Compensation Act. Although acknowledging that defendants' knowing exposure of plaintiffs to asbestos was a deliberate risk to their health, the court held "the mere knowledge and appreciation of a risk—even the strong probability of a risk—will come up short of the 'substantial certainty' needed to find an intentional wrong resulting in avoidance of the exclusive-remedy bar of the compensation statute." (*Millison*, 101 NJ at 179, 501 A2d at 514-515.) However, plaintiffs' cause of action for aggravation of their initial occupational diseases constituted a valid claim,

since defendants fraudulently concealed their medical conditions, thus preventing them from obtaining early treatment. The key factor in this regard was the employer's active, intentional and fraudulent misleading of the employees and conduct in concealing from them diseases already developed. This type of conduct is "not one of the risks an employee should have to assume" and is thus beyond that contemplated by the statute (*Millison*, 101 NJ at 182, 501 A2d at 516).

The New Jersey Supreme Court again revisited the question of "intentional wrong" in *Laidlow v Hariton Mach. Co., Inc.* (170 NJ 602, 790 A2d 884 [2002]). *Laidlow* involved a plaintiff-employee whose fingers were partially amputated by a rolling mill machine whose safety guard had been inactivated. The defendant-employer admittedly disabled the safety guard by tying it up with a wire because its use slowed down production. For approximately 13 years, the plaintiff and a number of other employees operated the machine in this condition and had, during that time, experienced several incidents where the rollers caught and ripped off their gloves. They escaped injury because they were fortunately able to extricate their hands from the gloves before being pulled into the machine. Each of these incidents was reported to defendant's supervisors with requests to have the guard activated. In fact, on three separate occasions just prior to the underlying incident, the plaintiff asked his supervisor to restore the guard to no avail.

The guard was, however, activated and placed in the proper position whenever OSHA inspectors came to the plant. On those occasions, the plaintiff's supervisor would instruct employees to release the wire holding up the safety guard, but would again disable the guard after the inspectors left.

The New Jersey Supreme Court, recognizing "the need for a chary interpretation of the intentional wrong exception," reaffirmed the two-prong test of *Millison* (*Laidlow*, 170 NJ at 617, 790 A2d at 894). In making its analysis, a reviewing court must take into account all the facts and circumstances of the case (*Laidlow*, 170 NJ at 614, 790 A2d at 892). The court held that "removal of a safety guard can meet the intentional wrong standard" but that "such a determination requires a case-by-case analysis" (*Laidlow*, 170 NJ at 619, 790 A2d at 895-896).

Applying those principles in *Laidlow*, the court found that an issue of fact existed as to whether the defendant's actions met the intentional wrong exception. While no one fact standing alone is sufficient to support such a determination, the totality of the circumstances there—the defendant's admission the guard was removed to expedite processing of work and increase

profits; the number of close calls involving the machine; the repeated requests by employees to reactivate the guards, particularly those in close temporal proximity to the incident in question; and the employer's actions in "systematically deceiv-[ing] OSHA into believing that the machine was guarded, inferentially at least, because it knew that operating the machine without the guard inevitably would cause injury and that OSHA would not allow such a dangerous condition to exist"—all combined to favor this conclusion. The court noted that the absence of prior accidents over a 13-year period "is simply a fact, like the close-calls, that may be considered in the substantial certainty analysis" (*Laidlow*, 170 NJ at 621, 622, 790 A2d at 897). However, it took pains to emphasize that "[o]ur holding is not be understood as establishing a *per se* rule that an employer's conduct equates with an 'intentional wrong' . . . whenever that employer removes a guard or similar safety device from equipment or machinery, or commits some other OSHA violation. Rather, our disposition in such a case will be grounded in the totality of the facts contained in the record and the satisfaction of the standards established in *Millison* and explicated here" (*Laidlow*, 170 NJ at 622-623, 790 A2d at 898).

Defendant's removal of the safety screen from the hot leather stamping machine used by plaintiff was therefore only one factor to consider and is insufficient by itself to demonstrate an intentional wrong under the meaning of section 34:15-8 (*id.*).

The dissent, in calling the conduct of this plaintiff's employer "remarkably similar" to that in *Laidlow* and *Mull v Zeta Consumer Prods.* (176 NJ 385, 823 A2d 782 [2003]), fails to distinguish the factual differences between both the employer's and employee's conduct in those cases and this one. For example, unlike *Laidlow* and *Mull*, in the present case there were no prior incidents or injuries caused by this machine; there is no evidence of deliberate deceit or fraudulent conduct on defendant's part; and there were no OSHA violations issued to defendant prior to this incident. Although plaintiff testified that he requested on a number of occasions that the safety guard be replaced, he and other employees continued to use the machine without incident. Significantly, the accident would not have occurred absent plaintiff's decision to retrieve a piece of stuck leather with his hand, rather than using a long-handled brush or long-handled screwdriver, which was the normal procedure to clear machine jams over the past 13 years that the machine had been in use. In fact, plaintiff testified at his deposition that he used such a long-handled screwdriver over the years to clear jams in the machine. Moreover, another employee who was

working with plaintiff testified that, at the time of the incident, she had actually gone to retrieve the long-handled brush which all the supervisors had used over the years to clear the jam that gave rise to plaintiff's injuries. Rather than wait for her to return with the brush, plaintiff inserted his hand into the machine to clear the jam, and in so doing sustained his injuries. Thus, there is an insufficient basis for finding that defendant knew that its conduct in not replacing the safety screens was "substantially certain" to result in plaintiff's injury (*Van Dunk v Reckson Assoc. Realty Corp.*, 210 NJ 449, 462, 45 A3d 965, 973 [2012]; *see Millison*, 101 NJ 161, 501 A2d 505), or that there was a "virtual certainty" of injury (*see Millison*, 101 NJ at 178, 501 A2d at 514). The probability or knowledge that such injury "could" result, or even that an employer's action was reckless or grossly negligent, is not enough to invoke the statutory exception for intentional wrongdoing (*see Van Dunk*, 210 NJ at 470, 472, 45 A3d at 977-978, 979). Concur—Friedman, J.P., Sweeny and Renwick, JJ.

Acosta and Manzanet-Daniels, JJ., dissent in a memorandum by Manzanet-Daniels, J., as follows: On this record, issues of fact exist regarding whether the conduct of plaintiff's employer in dismantling various safety features of a leather stamping machine was "substantially certain to result in injury" so as to exempt plaintiff from the exclusivity provisions of the New Jersey's Workers' Compensation Law (*Mull v Zeta Consumer Prods.*, 176 NJ 385, 391, 823 A2d 782, 785 [2003]; *Laidlow v Hariton Mach. Co., Inc.*, 170 NJ 602, 623, 790 A2d 884, 898 [2002]). I would accordingly affirm the order appealed from.

On the date of the incident, in October 2007, plaintiff was stamping a piece of leather when the leather became stuck in the machine. When plaintiff attempted to extricate it, the top of the machine abruptly came down, severely burning his hand.[1] None of this would have occurred had the required safety mechanisms, including a safety guard which prevented insertion of a hand beyond a certain point, and a foot pedal which had to be depressed in order for the machine to operate, been in place.

The subject machine was purchased from a predecessor

---

1. Defendant complains that plaintiff inappropriately used his fingers to remove the leather, rather than another device such as a long screwdriver. This fact goes to comparative liability and does not preclude a finding of liability on defendant's part. The record also contains conflicting evidence as to whether defendant had the requisite hand tools prescribed by OSHA for removal of stuck pieces.

company, for which plaintiff and defendant's vice-president of marketing and sales previously worked, and was sold along with the business to defendant corporation. Defendant's vice-president testified that he never requested a manual for the subject machine because it was "similar to other machines we had." To his knowledge, no one had ever performed a risk analysis of the machine.

In 2006, defendant company moved from Long Island City to Elizabeth, New Jersey. The safety gate on the hot stamping machine was apparently inadvertently discarded during the move. Plaintiff testified that he asked the owner and the company mechanic "every day" to replace the safety gate, to no avail. The machine thus could be operated without the safety gate, in violation of OSHA regulations. At some time thereafter, in order to facilitate production on a special order, the foot pedal was taped down.[2] Thus, a worker could activate the machine simply by inserting the leather over a sensor, bypassing the need to also depress the foot pedal.

Defendant's vice-president testified that the machine lacked a drive mechanism that would have prevented the machine from operating when the guard was missing. He was unaware it was contrary to OSHA regulations for the machine to operate without such a mechanism.

Defendant's vice-president testified that employees had been injured on the machines at the Long Island City facility, recalling an incident on one of the hot stamping machines. He did not know whether the incident had been reported to OSHA. He was not aware of any visits by OSHA to either the Long Island City or the Elizabeth facility. Defendant's general manager testified that at no point during her tenure at SML had anyone from OSHA inspected the factory.

Plaintiff's expert engineer, who examined the machine, opined within a reasonable degree of scientific certainty that defendant's disengagement of the safety features on the machine contributed to the injuries sustained by plaintiff. He opined that the machine lacked one or more methods of machine guarding, as well as interlock switches and sensors intended to shut down the machine upon opening of the guard (see 29 CFR 1910.212 [a] [1], [4]).[3]

---

**2.** Whether or not plaintiff himself taped the pedal down does not absolve defendant of liability. Defendant cannot delegate its duty to comply with OSHA and workplace regulations to an employee.

**3.** Defendant urges this court to disregard the affidavit of plaintiff's expert engineer because it was apparently submitted after the note of issue had been

Defendant's actions suffice to raise a triable issue of fact as to whether its conduct was substantially certain to result in injury (*see* NJ Stat Ann § 34:15-8; *Laidlow v Hariton Mach. Co., Inc.*, 170 NJ 602, 623, 790 A2d 884, 898 [2002]; *Mull v Zeta Consumer Prods.*, 176 NJ 385, 823 A2d 782 [2003]). Indeed, the conduct of plaintiff's employer is remarkably similar to the conduct of the employers in *Laidlow* and *Mull*, two of the seminal cases concerning this exemption from the Workers' Compensation Law. Both *Laidlow* and *Mull* concerned the dismantling of machine safety features; *Laidlow* involved the removal of a guard, and *Mull* the removal of safety interlock switches designed to arrest a machine and permit removal of jams. In each case, the New Jersey Supreme Court ruled that an employer's disengagement of critical safety mechanisms sufficed to show that the employer's conduct was substantially certain to result in injury. Indeed, a concurring justice in *Mull* opined that removal or disabling of critical safety features amounts to a "total breach of the social contract between employer and employee" (*Mull*, 176 NJ at 396, 823 A2d at 789).

The majority is of the view that the lack of prior incidents compels a decision in the employer's favor. However, the New Jersey Supreme Court has stated that in determining whether an employer's actions trigger the statutory exemption, a court is to examine the totality of the circumstances, giving no especial weight to any one particular factor. In *Laidlow*, the New Jersey Supreme Court explained: "The appreciation of danger can be obtained in a myriad of ways other than personal knowledge or previous injuries. Simply because people are not injured, maimed or killed every time they encounter a device or procedure is not solely determinative of the question of whether that procedure or device is dangerous and unsafe. If we were to accept the appellee's reasoning, it would be tantamount to giving every employer one free injury for every decision, procedure or device it decided to use, regardless of the knowledge or substantial certainty of the danger that the employer's decision entailed. . . . It is not incumbent that a person be burned before one knows not to play with fire" (*Laidlow*, 170 NJ at 621, 790 A2d at 897 [citation and emphasis omitted]).

Finally, defendant argues that it did not act with a culpable state of mind because the record shows that the safety guard

---

filed. We note that the CPLR provides that "where a party for good cause shown retains an expert an insufficient period of time before the commencement of trial to give appropriate notice thereof," the party shall not be precluded from introducing the expert's testimony at trial solely on such ground, leaving the matter to the discretion of the trial court (*see* CPLR 3101 [d] [1] [i]).

was accidentally discarded during the company's move from Long Island City to New Jersey. This argument is wholly unpersuasive. While disposal of the guard may have been inadvertent, the failure to replace it, despite plaintiff's daily pleas to do so, may certainly be viewed as conduct substantially certain to result in injury.