607 A.2d 637

CHRIS JOHANSEN, PLAINTIFF-APPELLANT, v. MAKITA U.S.A., INC., A NEW YORK CORP. DOING BUSINESS IN NJ, AND MAKITA ELECTRIC WORKS LTD., DEFENDANTS-RESPONDENTS, AND XYZ CORP. AND JOHN DOE, FICTITIOUS NAMES REPRESENTING THE CLASS OF AS YET UNKNOWN AND UNQUANTIFIED CORPORATIONS, PARTNERSHIPS OR INDIVIDUALS WHO MANUFACTURED, DESIGNED, ASSEMBLED OR DISTRIBUTED THE MITER SAW THAT CAUSED PLAINTIFF'S INJURY, DEFENDANTS.

Argued January 6, 1992—Decided June 9, 1992.

*Dennis M. Donnelly* argued the cause for appellant (*Blume, Vazquez, Goldfaden, Berkowitz & Donnelly,* attorneys).

*Philip W. Crawford* argued the cause for respondents (*Crummy, Del Deo, Dolan, Griffinger & Vecchione,* attorneys).

The opinion of the Court was delivered by

STEIN, J.

Plaintiff, Chris Johansen, brought this strict-products-liability action alleging that he had sustained personal injuries caused by the defective design of a power saw manufactured and distributed by defendants. At the close of the evidence, the trial court ruled that defendants could not assert a comparative-negligence defense. The court, however, did not instruct the jury that comparative negligence was not at issue in the case, and declined to instruct the jury concerning the limited manner in which it could consider evidence of plaintiff's negligent operation of the saw. The jury returned a verdict for defendants, finding that the saw was not defectively designed. The Appellate Division held that the trial court did not err in failing to charge the jury that comparative negligence was not a defense because the jury instruction's reference to plaintiff's conduct focused on the issue of product defect. We granted certification, 126 *N.J.* 334, 598 *A.2d* 892 (1991), and now reverse.

## I

Johansen was injured while performing carpentry work on a house under construction. At the time of the accident, plaintiff was using a power miter saw manufactured by defendant Makita U.S.A., Inc., distributed by defendant Makita Electric Works, Ltd., (defendants), and supplied by his employer. A miter saw is manually operated, except that an electric motor operates the rotating blade. To make a cut, the user must place the wood on the saw's platform, hold the wood securely against the "fence" with a vise or by hand, and use the other hand to pull the blade down through an opening in the fence and into the wood. The accident occurred as plaintiff attempted to cut a few inches off of the end of a six-foot-long two-by-four. As he braced the board on the saw's platform with his left hand, most of the board extended off the platform to the left. Plaintiff, however, did not prop up the unsupported end of the long board. Instead he applied pressure to the end that he was cutting to keep the board flat against the saw platform while he made the cut. According to plaintiff, as the blade hit the wood, the wood shifted and drew his hand into the path of the blade. The saw severed his index and middle fingers and part of his thumb.

Although the saw had been marketed with a protective guard for the blade, the guard was not attached at the time of the accident. Plaintiff testified that he did not know that the saw was manufactured with a guard. He also stated that the guard was attached to the saw when he visited the job site a few weeks after the accident.

Prior to trial, defendants requested an order permitting them to present evidence of plaintiff's contributory negligence, contending that plaintiff's injury had not occurred in an industrial setting and thus the jury should be permitted to determine whether plaintiff had voluntarily encountered a known risk. See Suter v. San Angelo Foundry & Mach. Co., 81 N.J. 150, 166–68, 406 A.2d 140 (1979). Plaintiff cross-moved to bar all

evidence of plaintiff's contributory negligence. The court denied both motions, observing that they were premature. At the close of plaintiff's case, plaintiff renewed his motion to bar the affirmative defense of comparative negligence. The trial court again reserved decision and asked counsel to renew the motion at the conclusion of the case. At the close of defendant's case, plaintiff renewed his motion and the court granted it, striking the defense of comparative negligence.

At trial, plaintiff's engineering expert theorized that when plaintiff pulled the saw into the wood, the wood quickly rotated, pulling plaintiff's hand into the path of the blade. In his opinion, the two-inch opening in the "fence" was too wide, and the resultant instability permitted the wood to rotate. He also testified that because the manufacturer had not provided a vise or clamp with the saw, the user had to place his hand dangerously close to the blade to stabilize the wood while cutting it. Thus, because of the excessive width of the fence opening and the absence of a clamp or vise, the saw was defectively designed and the defect proximately caused plaintiff's injuries. The expert also testified that the guard originally supplied with the saw would not have prevented the accident.

Defendants claimed that the guard was the only safety device they were required to provide, and that although a vise would have been convenient, it was not essential. Defendant's expert testified that the accident had occurred because plaintiff had accidentally placed his fingers directly in the path of the saw blade. He stated that a vise was unnecessary for the safe use of the saw, noting that plaintiff could have avoided the accident by using "common sense" and propping up the unsupported end of the board, thereby eliminating the need to place his hand so close to the blade. The expert also testified that the guard would have prevented the blade from coming into contact with plaintiff's fingers.

During the trial, defendants focused on the degree of care that plaintiff had used in the operation of the power saw. In

his opening statement, defense counsel stated that a user of the product must use it "reasonably and properly" with "a degree of care." He explained that the "common logical thing to do" would be to prop up the free end of the board with a piece of wood, and suggested that plaintiff might have failed to do that because "he was in a rush." Defense counsel continued to emphasize that point through direct examination of his expert witness and cross-examination of plaintiff. For example, he asked plaintiff on three separate occasions why he had not supported the free end of the wood before he had made the cut. Each time, plaintiff responded that it had not occurred to him to support the wood because he had never done that before. One of plaintiff's co-workers admitted on cross-examination that to support the far end of the board made "common sense," and that he usually did so. Defense counsel also introduced into evidence several other types of power tools available to plaintiff at the site to show both that plaintiff had freely chosen to use a miter saw without a guard and that other saws required the user to place his or her hands in close proximity to the blade.

Because plaintiff's conduct while using the saw had been thoroughly explored before the jury, plaintiff requested that the trial court instruct the jury that it could not consider evidence of plaintiff's negligent operation of the saw because the defense of comparative negligence had been barred. The trial court rejected plaintiff's request because plaintiff's conduct in operating the saw was relevant to the issue of causation. Hence the jury was never informed that evidence of plaintiff's negligent operation of the saw was not a defense to plaintiff's claim. Nor did the trial court instruct the jury that evidence of plaintiff's misuse of the saw was relevant only to the issue of causation.

The court gave the jury a strict products-liability design-defect charge, and explained that plaintiff could show that the saw was defectively designed by proving that

the product is so dangerous that it creates a risk of harm outweighing its usefulness * * *.

> To make this determination you have to consider the following factors: the usefulness of and benefit of the product as it was designed to the user and to the public as a whole, was there a need for this product which was specifically served by its production, the safety aspects of the product, that is, the likelihood of risk that the product, the saw, as designed would cause injury, and the probable seriousness of such injury. If there is a probability of injury, what was the seriousness of the injury which could have or should have been anticipated through the use of the product, the saw.
>
> You should also consider the ability of the defendant to eliminate the unsafe character of the product without impairing its usefulness or making it too expensive to maintain its utility. You should also consider as an element the ability of foreseeable users to avoid danger by the exercise of care in the use of the product.

After concluding the charge, the court then gave the jurors the following interrogatories to assist them in their deliberations:

1. Was the defendant's saw defective because it did not have a clamp or vise?
2. If so, was that defect a proximate cause of the plaintiff's injury?
3. Was the saw that defendants manufactured and sold defective because the saw had too wide a fence opening?
4. If so, was that defect a proximate cause of the plaintiff's injury?

The jury returned a verdict in favor of defendants, finding that neither the fence opening nor the lack of a vise had rendered the saw defective.

Plaintiff appealed on several grounds, among them that the trial court had erred in admitting evidence concerning plaintiff's negligence in operating the saw, or, in the alternative, in failing to instruct the jury that contributory negligence was not an issue. In an unpublished opinion, the Appellate Division agreed that comparative fault was not an issue in the case. The court found, however, that the trial court had properly admitted evidence of plaintiff's conduct because the risk-utility analysis on which the jury had been instructed, *see supra* at 92–93, 607 A.2d at 640–641, entitled defendant to focus on plaintiff's ability to avoid the danger of the miter saw by use of reasonable care. The court also noted that plaintiff's conduct was relevant to the issue of proximate cause because the jury could have concluded that plaintiff had accidentally placed his hand in the path of the blade. Finally, the court held that the jury

charge properly focused on plaintiff's conduct in the context of the risk-utility analysis rather than on the relative fault of the parties, and that the trial court therefore had not erred in failing to instruct the jury that plaintiff's contributory negligence was not at issue in the case.

## II

Before us, plaintiff argues that the trial court erred in not making a preliminary ruling barring the comparative-negligence defense, and that the trial court committed plain error in neglecting to instruct the jury on the limited relevance of evidence concerning plaintiff's negligent operation of the saw. In addressing plaintiff's contentions, we restate some basic principles.

 Contributory negligence is not a defense to a strict-liability action when a plaintiff's negligent conduct consists of merely failing to discover or guard against the possibility of a defect in a product. *Suter, supra,* 81 *N.J.* at 158, 406 *A.*2d 140; *accord Cepeda v. Cumberland Eng'g Co.,* 76 *N.J.* 152, 185, 386 *A.*2d 816 (1978) (holding that "contributory negligence in the sense of mere carelessness or inadvertence" not a defense in strict-liability cases), *overruled in part* by *Suter, supra,* 81 *N.J.* at 177, 406 *A.*2d 140. In general, however, when a plaintiff with actual knowledge of the danger presented by a defective product knowingly and voluntarily encounters that risk, a trial court should submit the comparative-negligence defense to a jury. *Id.* at 158–59, 406 *A.*2d 140; *Cepeda, supra,* 76 *N.J.* at 184–86, 386 *A.*2d 816. Even that conduct, however, cannot serve as a basis for a contributory-negligence defense when an employee is injured in an industrial setting while using a defective product supplied by the employer for its intended or foreseeable purposes. *Suter, supra,* 81 *N.J.* at 167–68, 406 *A.*2d 140. Because an industrial employee has no choice but to use the product to complete his or her assigned task, "the law does not accept the employee's ability to take care of himself as

an adequate safeguard" of the interests society seeks to protect. *Id.* at 167, 406 *A.*2d 140.

In determining a manufacturer's liability for an allegedly defective product, the inquiry should focus on the condition of the product, not the plaintiff's use of care in operating the product. Specifically, a jury must determine whether the product was defective, and if so, whether the defect rendered the product unfit for its intended or reasonably foreseeable purposes. *Id.* at 176, 406 *A.*2d 140. Where, as here, a plaintiff claims he was injured because a machine lacked essential safety devices, the relevant question is whether the absence of such devices rendered the machine's design defective.

This Court has adopted the risk-utility analysis as a means of determining whether a product is defectively designed. *See O'Brien v. Muskin Corp.*, 94 *N.J.* 169, 181–84, 463 *A.*2d 298 (1983); *Suter, supra,* 81 *N.J.* at 172–74, 406 *A.*2d 140; *Cepeda, supra,* 76 *N.J.* at 172–80, 386 *A.*2d 816. The analysis requires a jury to impose liability on the manufacturer if the danger posed by the product outweighs the benefits of the way the product was designed and marketed. *Id.* at 173, 386 *A.*2d 816 (citing Page Keeton, *Product Liability and the Meaning of Defect,* 5 *St. Mary's L.J.* 30, 37–38 (1973)). The analysis imputes knowledge of the danger to the manufacturer, and then asks whether, given that knowledge, a reasonably prudent manufacturer nevertheless would have placed the product on the market. *O'Brien, supra,* 94 *N.J.* at 183, 463 *A.*2d 298; *Suter, supra,* 81 *N.J.* at 171–72, 406 *A.*2d 140; *Cepeda, supra,* 76 *N.J.* at 172, 386 *A.*2d 816. Under the risk-utility analysis, manufacturers cannot escape liability on the grounds of plaintiff's misuse or abnormal use if the actual use proximate to the injury was objectively foreseeable. *Id.* at 177–78, 386 *A.*2d 816. We have observed that an abnormal or unforeseeable use of a product is not an affirmative defense. "It is rather for the plaintiff, in undertaking to prove that the unreasonable dangerousness of the article caused the injury, to show there was no

abnormal use." *Id.* at 177, 386 *A.*2d 816. Defendants have not contended, however, that the manner in which plaintiff used the saw was abnormal or unforeseeable.

■ In applying the risk-utility analysis, the trial court should first consider the following seven factors in order to determine whether to preclude liability as a matter of law because "the minds of reasonable men [or women] could not differ on whether the risks posed by a product outweigh its utility." *O'Brien, supra,* 94 *N.J.* at 186, 463 *A.*2d 298:

"1. The usefulness and desirability of the product—its utility to the user and to the public as a whole.

2. The safety aspects of the product—the likelihood that it will cause injury, and the probable seriousness of the injury.

3. The availability of a substitute product [that] would meet the need and not be as unsafe.

4. The manufacturer's ability to eliminate the unsafe character of the product without impairing its usefulness or making it too expensive to maintain its utility.

5. The user's ability to avoid danger by the exercise of care in the use of the product.

6. The user's anticipated awareness of the dangers inherent in the product and their avoidability, because of general public knowledge of the obvious condition of the product or of the existence of suitable warnings or instructions.

7. The feasibility, on the part of the manufacturer, of spreading the loss by setting the price of the product or carrying liability insurance."

[*Id.* at 174, 386 *A.*2d 816 (quoting Dean John Wade, *On the Nature of Strict Tort Liability For Products,* 44 *Miss.L.J.* 825, 837–38 (1973)).]

*Accord O'Brien, supra,* 94 *N.J.* at 182, 463 *A.*2d 298; *Navarro v. George Koch & Sons,* 211 *N.J.Super.* 558, 578, 512 *A.*2d 507 (App.Div.), *certif. denied,* 107 *N.J.* 48, 526 *A.*2d 138 (1986). If the court determines that liability is not precluded, it may submit any of the factors relevant to the litigation for the jury's determination. *O'Brien, supra,* 94 *N.J.* at 185, 463 *A.*2d 298; *Cepeda, supra,* 76 *N.J.* at 174–75, 386 *A.*2d 816; *Navarro, supra,* 211 *N.J.Super.* at 578, 512 *A.*2d 507.

The fifth factor is the source of the conflict in this case. Defendants claim that because that factor focuses on a user's ability to avoid injury by the use of reasonable care, evidence of plaintiff's exercise of care in operating the saw was relevant to

the question of product defect, and no limiting instruction was necessary.

## III

The parties do not contest the trial court's ruling that defendants were barred from asserting the comparative-negligence defense. Although that issue is not now before us, its disposition at trial generated significant confusion. As noted, defendants contended before trial that the *Suter* holding did not apply, and therefore the jury should be permitted to consider evidence that plaintiff had knowingly and voluntarily encountered a known risk—the absence of a guard. Plaintiff's theory of the case, however, was that the saw was defective because it lacked a vise and because the opening in the fence was too wide, and plaintiff testified that he had been unaware that the saw was equipped with a guard. At the close of the case, the trial court ruled that plaintiff's contributory negligence was not a defense, relying on *Crumb v. Black & Decker*, 204 *N.J.Super.* 521, 529–30, 499 *A.*2d 530 (App.Div.1985). That ruling apparently reflected the court's determination that the evidence of plaintiff's negligence related primarily to his failure to prop up the two-by-four, causing instability in the wood that might have been avoided if the saw had been equipped with a vise. Because there was no evidence that plaintiff had voluntarily used the saw knowing that the guard was missing, the trial court did not need to determine whether *Suter* applied. Before us, however, defendants have apparently abandoned the contention that plaintiff voluntarily encountered a known risk, asserting that plaintiff's use of the saw was relevant only to the issues of proximate cause and whether the product was defective.

We first consider plaintiff's contentions that the trial court erred in delaying the decision to bar the comparative-negligence defense until the close of the evidence. Plaintiff contends that the trial court's refusal to grant plaintiff's pretrial motion

allowed the jury to hear a substantial amount of irrelevant and prejudicial evidence regarding plaintiff's operation of the saw. Defendant now contends that the evidence of plaintiff's conduct was relevant to the risk-utility analysis and the issue of proximate cause, and thus plaintiff was not prejudiced by the timing of the court's ruling.

A preliminary ruling barring the comparative-negligence defense might have clarified the purpose for which evidence of plaintiff's conduct was admissible and might have helped the trial court focus the jury's attention on the limited relevance of such evidence. For example, defendants' witnesses testified that plaintiff cut the wood without first supporting the far end of the six-foot board, and defense counsel repeatedly suggested that plaintiff had acted carelessly because he was in a hurry. As noted, defendants did not contend that the manner in which plaintiff used the saw constituted unforeseeable misuse. Although plaintiff's failure to support the board was relevant to the issue of proximate cause, the jury could not consider plaintiff's conduct as evidence of contributory negligence, *see Suter, supra*, 81 *N.J.* at 158–59, 406 *A.*2d 140, or in addressing the issue of product defect. See *infra* at 101, 607 *A.*2d at 645.

We recognize, however, that the trial court may have had difficulty in determining during the early stages of trial that it should have barred the comparative-negligence defense as a matter of law. The trial court was apparently uncertain about how evidence of plaintiff's conduct would relate to proximate cause, to the issue of product defect, and to defendants' contention that plaintiff had voluntarily encountered a known risk. Moreover, a preliminary ruling would not have excluded evidence of plaintiff's carelessness that was relevant to the issue of causation. Nevertheless, a cautionary instruction accompanying the admission of that evidence would have been appropriate. It could have included a repetition of the standard instruction that the jury refrain from making any findings or

drawing any conclusions with respect to such evidence until the close of the case and the court's final instructions to the jury before its deliberations. It also could have alerted the jury that evidence of plaintiff's conduct had only limited relevance in strict-products-liability litigation, and that its relevance would be explained as part of the comprehensive instruction at the close of the case. Such a cautionary instruction would have reduced the risk of the improper use of the evidence and would have assisted the jury in evaluating the significance of the evidence adduced at trial. Under the circumstances, however, we are satisfied that the trial court's ruling denying plaintiff's pretrial motion to bar the defense of comparative negligence was a permissible exercise of the court's discretion.

## IV

We next consider whether the trial court erred in not informing the jury that comparative negligence was not an issue in the case, and in not explaining the limited relevance of evidence of plaintiff's conduct. *Evidence Rule* 6, which requires that the trial court instruct the jury concerning the proper relevance of evidence admissible for one purpose but inadmissible for another, has been applied to require a limiting instruction where comparative negligence has been barred but plaintiff's conduct may be relevant to other issues. In *Siren v. Behan*, 224 *N.J.Super.* 130, 539 *A.2d* 1244 (App.Div.), *certif. granted* and *summarily remanded*, 113 *N.J.* 323, 550 *A.2d* 442 (1988), the trial court had barred the comparative-negligence defense because the plaintiff-victim had had no duty under prevailing law to wear a seat belt. In holding that the trial court had committed error in failing to instruct the jury on the limited relevance of plaintiff's conduct, the court noted that the use of evidence of decedent's failure to wear a seatbelt

required a clear jury instruction as to its use and limitations for several reasons. First, it was necessary that the jury be made aware that the evidence was to be considered in light of the evidence presented concerning the general public's practices and standards concerning seat belt use in and about the time

of sale; second, the jury had to be instructed on how to use the evidence in applying the * * * factors in the risk-utility analysis, and third, it was imperative that the jury be cautioned that the evidence was not to be considered on the issue of decedent's negligence or fault. [*Id.* 224 *N.J.Super.* at 138, 539 *A.*2d 1244.]

Although this Court summarily remanded *Siren* in light of *Waterson v. General Motors,* 111 *N.J.* 238, 544 *A.*2d 357 (1988), in which this Court recognized a passenger's duty to wear a seat belt, *Siren* is instructive because it emphasizes that limiting instructions are necessary to clarify the use of evidence of plaintiff's conduct in cases in which the plaintiff's contributory negligence is not in issue but the evidence may be relevant for other purposes. *Cf. Bottignoli v. Ariens Co.,* 234 *N.J.Super.* 353, 358–61, 560 *A.*2d 1261 (App.Div.1989) (failing to give limiting instructions that plaintiff could not be considered contributorily negligent not prejudicial when court expressly told jury at the time evidence was introduced not to consider plaintiff's fault); *Beatty v. Schramm, Inc.,* 188 *N.J.Super.* 587, 458 *A.*2d 127 (App.Div.1983) (trial court committed reversible error in not giving limiting instructions; although plaintiff's conduct was relevant to issue whether his misuse was foreseeable, such conduct was not relevant to issue of plaintiff's contributory negligence).

The fifth factor of the risk-utility analysis requires the jury to consider the extent to which a product's user can avoid injury through the exercise of care. Defendants argue that because that factor permits a jury to consider evidence of a user's conduct in determining whether a product is defectively designed, evidence concerning Johansen's use of the saw was relevant and no limiting instruction was necessary. That argument, however, misconceives the purpose and function of the fifth factor of the risk-utility analysis. The risk-utility analysis is an objective test that focuses on the product. Our endorsement of the risk-utility analysis in *Cepeda, supra,* 76 *N.J.* at 172–73, 386 *A.*2d 816, quotes with approval the objective product-oriented explanation of that test by Dean Wade:

"The simplest and easiest way, it would seem, is to assume that the defendant knew of the dangerous condition of the product and ask whether he was then negligent in putting it on the market or supplying it to someone else. * * * Another way of saying this is to ask whether the magnitude of the risk created by the dangerous condition of the product was outweighed by the social utility attained by putting it out in this fashion." [*Id.* at 172, 386 *A.*2d 816 (quoting Wade, *supra,* 44 *Miss.L.J.* at 834–35).]

Dean Keeton's analysis is similar:

"A product is defective if it is unreasonably dangerous as marketed. It is unreasonably dangerous if a reasonable person would conclude that the magnitude of the scientifically perceivable danger *as it is proved to be at the time of trial* outweighed the benefits of the way the product was so designed and marketed." [*Id.* at 173, 386 *A.*2d 816 (quoting Keeton, *supra,* 5 *St. Mary's L.J.* at 37–38).]

The fifth factor of the risk-utility analysis requires the jury to consider the extent to which the hypothetical "average user" of the product—not the plaintiff—could avoid injury through the use of due care. Because the risk-utility analysis is based on the premise that a product is defective if it is dangerous when marketed, the post-marketing conduct of one plaintiff cannot inform that determination. Evidence of this plaintiff's use of care in the operation of the saw was irrelevant to the risk-utility analysis.

Evidence that an average user could avoid injury through the use of due care is best offered through testimony of expert witnesses. When such evidence is offered, an instruction that the plaintiff's conduct not be considered in the context of the risk-utility analysis is essential. Without it, a jury might find that a product, although improperly designed, is not defective because the plaintiff could have avoided the danger posed by the product through the exercise of due care. Put differently, a jury not properly instructed might inadvertently compare a plaintiff's and defendant's fault in determining whether a product is defectively designed. Such a comparison would dilute the limitations that we have imposed on the assertion of the comparative-negligence defense in strict-liability-design-defect litigation. *Suter, supra,* 81 *N.J.* at 158–60, 406 *A.*2d 140.

The danger that the jury might improperly focus on plaintiff's behavior in deciding the issue of product defect was especially acute in this case. Throughout the trial, defendants emphasized plaintiff's conduct in operating the saw, partly because they were unsure whether the trial court would charge comparative negligence. Defendants maintained that plaintiff could have avoided injury by using due care or "common sense." Thus, the jury should have been instructed not to consider evidence concerning plaintiff's lack of care in deciding the question of design defect. However, in balancing the risk-utility factors to determine product defect, the jury properly could have considered the expert testimony indicating that users of the saw could avoid injury by propping up the end of the board before cutting the wood.

The evidence of plaintiff's conduct was relevant, however, to the question of proximate cause. The jury might have found that the absence of the guard combined with plaintiff's careless operation of the saw were the sole causes of the accident. Nevertheless, the court should have explained to the jury that although it could deny plaintiff recovery if it found he was entirely responsible for the accident, it could not deny plaintiff recovery if it found that the rotation of the wood attributable to the defective design of the saw was a partial cause of the accident and that plaintiff's failure to prop up the two-by-four, concededly a foreseeable use of the saw, was also a contributing cause. We emphasize again that a "manufacturer's duty is imposed precisely to avert foreseeable inadvertent injury to a user of a product." *Cepeda, supra,* 76 *N.J.* at 185, 386 *A.*2d 816; *accord Bexiga v. Havir Manufacturing Corp.,* 60 *N.J.* 402, 412, 290 *A.*2d 281 (1972).

We hold that the trial court committed plain error in failing to instruct the jury on the limited purpose for which it could consider evidence of plaintiff's negligent operation of the saw. On this record, the absence of a limiting instruction clearly had the capacity to mislead the jury in its application of the risk-utility factors, particularly in view of the extent to which

defendant's proofs emphasized plaintiff's lack of due care. The trial court should have instructed the jury, in accordance with its earlier ruling, that evidence of plaintiff's method of operating the saw was neither a defense to plaintiff's strict-products-liability claim nor relevant to the jury's application of the fifth factor of the risk-utility analysis. Such evidence could have been considered, however, in determining whether the specific manner in which plaintiff had operated the saw had been the sole cause of the accident.

The judgment of the Appellate Division is reversed and the cause remanded to the Law Division for a new trial.

*For reversal and remandment*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.