**Sterling LEWIS, Appellant**

v.

**CRC INDUSTRIES, INC., Appellee.**

Superior Court of Pennsylvania.

Argued May 19, 2010.

Filed Sept. 27, 2010.

Reargument Denied Dec. 7, 2010.

Charles L. Tannenbaum, Jenkintown, for appellant.

Brett Wolfson, Philadelphia, for appellee.

BEFORE: ALLEN, LAZARUS, and FREEDBERG *, JJ.

OPINION BY LAZARUS, J.:

Sterling Lewis appeals from the judgment entered in the Philadelphia County Court of Common Pleas in favor of Appellee, CRC Industries, Inc. ("CRC"), following a jury trial in this strict product liability action. After careful review, we reverse and remand for a new trial.

Lewis, worked as an apprentice lineman for Vineland Municipal Electrical Utility, a New Jersey company. Lewis was the junior member of a four-person team, which included Kevin Sherman. On October 1, 2004, the team received a work order to perform pole top breaker maintenance. Part of the work order required the team to clean pole top electrical switches using CRC PF Precision Cleaner ("Precision Cleaner"), an aerosol solution manufactured by CRC. The team decided Lewis would perform the maintenance. This would be the second time Lewis performed pole-top breaker maintenance, and his first time using Precision Cleaner to perform such maintenance.

Lewis and Sherman put on protective gloves, sleeves, and gauntlets. Lewis and Sherman were then lifted, each in their own insulated one-person passenger bucket, to the electrical switches.[1] The switch is comprised, in part, of a "blade side" and a "keeper side." Once in position, Lewis cleaned the switches spraying Precision Cleaner to remove dirt and grease. At

* Retired Senior Judge assigned to the Superior Court.

1. The bucket was equipped with a fiberglass step mounted 16 inches above the bucket's floor.

one point, Lewis climbed up on a step inside his bucket to gain better access to clean the switches. In doing so, Lewis's right hip touched the uninsulated metal tie rod. Lewis then sprayed Precision Cleaner to the keeper side of the switch, and in doing so received a severe electrical shock.

Sherman supervised as Lewis cleaned the switches. On direct examination, Sherman confirmed that Lewis stepped up in his bucket and sprayed Precision Cleaner. Sherman testified that he then witnessed a "small ball of fire" travel through the air toward Lewis and "roll" around his hand. N.T. Trial, 3/18/09, at 16. Sherman testified he believed that when Lewis stepped up in his bucket Lewis's right hip made contact with the uninsulated metal tie rod, which completed an electrical circuit causing Lewis to be electrocuted. N.T. Trial, 3/18/09, at 68. As a result, Lewis sustained severe burns and scarring to his body.

Lewis sued CRC alleging that Precision Cleaner was designed defectively and contained inadequate warnings of the product's dangers.[2] In particular, Lewis claimed the product was defective because the aerosol spray conducted electricity.[3] After a two-week trial, the jury determined that, according to New Jersey law, the product was not designed defectively and returned a verdict in favor of CRC.[4] On appeal, Lewis contends that the trial court's jury instructions were erroneous.[5] Specifically, Lewis alleges: (1) the trial court improperly instructed the jury on the principles of contributory and comparative negligence and assumption of risk and, (2) the trial court failed to instruct the jury not to consider his use of the product when determining whether the product was defective under the risk-utility analysis.[6]

 Under Pennsylvania law, our standard of review when considering the adequacy of jury instructions in a civil case is to "determine whether the trial court committed a clear abuse of discretion or error of law controlling the outcome of the case." *Stewart v. Motts*, 539 Pa. 596, 654 A.2d 535 (1995). It is only when "the charge as a whole is inadequate or not clear or has a tendency to mislead or confuse rather than clarify a material issue" that error in a charge will be found to be a sufficient basis for the award of a new trial. *Id.* at 540; *Ferrer v. Trustees of University of Pennsylvania*, 573 Pa. 310, 825 A.2d 591, 612 (2002); *see also Tindall v. Friedman*, 970 A.2d 1159, 1175 (Pa.Super.2009).

 First, Lewis contends the trial court committed reversible error in instructing the jury on the principles of contributory and comparative negligence and assumption of risk in this strict product liability action. We agree.

---

2. Lewis's failure to warn claim is not relevant to our disposition.

3. *See Jurado v. W. Gear Works*, 131 N.J. 375, 619 A.2d 1312, 1317 (1993) ("To succeed under a strict-liability design-defect theory, a plaintiff must prove that (1) the product was defective; (2) the defect existed when the product left the hands of the defendant; and (3) the defect caused the injury to a reasonably foreseeable user.").

4. The parties agreed New Jersey substantive law would govern this action. Procedurally, Pennsylvania law governs and, therefore, determines our standard of review of Lewis's challenge to the trial court's jury instructions.

5. Because of our disposition of these issues, we do not address Lewis's claim that the court erred in admitting certain evidence at trial.

6. Lewis preserved these issues on appeal by objecting to the trial court's instructions at the time of trial, in his post-trial motion, and in his Pa.R.A.P. 1925(b) statement.

■ New Jersey case law has repeatedly held that the principles of comparative and contributory negligence do not apply in a strict product liability action where a plaintiff is injured by a defective product while performing a job assignment at his or her workplace. *Suter v. San Angelo Foundry & Mach. Co.*, 81 N.J. 150, 406 A.2d 140 (1979); *Green v. Sterling Extruder Corp.*, 95 N.J. 263, 471 A.2d 15, 16 (1984).

In *Suter*, the New Jersey Supreme Court held that "an employee engaged at his assigned task on a plant ... has no *meaningful choice*," and "irrespective of the rationale that the employee may have unreasonably and voluntarily encountered a known risk, we hold as a matter of policy that such an employee in not guilty of contributory negligence." *Id.* at 167 (emphasis added). The "essence of the *Suter* rule is that the employee had no meaningful choice. He either *worked at his assigned task* or was subject to discipline or being labeled as a troublemaker." *Crumb v. Black & Decker*, 204 N.J.Super. 521, 499 A.2d 530, 533 (1985) (emphasis added).

In *Tirrell v. Navistar Int'l, Inc.*, 248 N.J.Super. 390, 591 A.2d 643 (1991), plaintiff was killed when a tractor-trailer ran over him while operating in reverse. At the time of the accident, plaintiff-employee had recently arrived at his jobsite and was speaking with his foreman. The tractor-trailer was delivering a backhoe plaintiff was to service. Plaintiff's widow brought a product liability action against the manufacturer of the tractor-trailer. Her lawsuit alleged the tractor-trailer was designed defectively because the manufacturer failed to equip the tractor-trailer with an audible back-up signal. The jury returned a verdict in her favor. On appeal, the court rejected defendant's contention that *Suter* had limited the "employee exception" to the comparative negligence defense to "an employee engaged at his assigned task on a plant machine." *Id.* at 648. The court stated that "any limitation of the *Suter* principle to a factory setting would now clearly be inappropriate." *Id.*

According to the court in *Cavanaugh v. Skil Corp.*, 331 N.J.Super. 134, 751 A.2d 564 (1999), *Tirrell* represented the "next logical step" of *Suter*, which could no longer be interpreted "to apply only to factory workers injured while performing assigned tasks on factory machines on the factory floor." *Id.* at 595. The *Cavanaugh* court reasoned:

[I]t would be ludicrous to allow a factory employee to recover but not a construction worker solely because the former works inside a building on the factory floor. It would be equally ludicrous and unjust to permit an employee to recover for injuries sustained by a freestanding, stationary machine but not by a hand-held saw.

*Id.*

Indeed, since *Suter*, case law has established that the principles of comparative and contributory negligence are disregarded in the context of a strict product liability action involving workers injured performing a job task. *See Congiusti v. Ingersoll–Rand Co.*, 306 N.J.Super. 126, 703 A.2d 340, 344 (1997) (stating that there is "no question" comparative negligence of plaintiff is generally disregarded in workplace setting); *Mettinger v. W.W. Lowensten, Inc.*, 292 N.J.Super. 293, 678 A.2d 1115, 1125 (1996) (trial judge properly declined to give comparative negligence charge to jury because comparative negligence "is not applicable to a workplace setting where the worker has no meaningful choice"); *Fabian v. Minster Mach. Co.*, 258 N.J.Super. 261, 609 A.2d 487, 495–96 (1992) ("undisputed that defendant's defenses of contributory and comparative negligence were properly stricken

on the first day of trial" because "neither contributory nor comparative negligence is applicable where an employee is injured at a workplace task"); *Ramos v. Silent Hoist & Crane Co.*, 256 N.J.Super. 467, 607 A.2d 667, 672–73 (1992) (comparative fault of plaintiff injured while performing job activities at workplace is to be disregarded).

█ Moreover, New Jersey's Product Liability Act prohibits a trial court from charging the jury on contributory and comparative negligence when an employee is injured on workplace machinery or equipment. Under N.J.S.A. 2A:58C–3(a)(2), a product manufacturer may defend against design defect claims by showing:

> The characteristics of the product are known to the ordinary consumer or user, and the harm was caused by an unsafe aspect of the product that is an inherent characteristic of the product and that would be recognized by the ordinary person who uses or consumes the product with the ordinary knowledge common to the class of persons for whom the product is intended.

The New Jersey Legislature, however, expressly stated that this paragraph "shall not apply to industrial machinery *or other equipment used in the workplace.*" N.J.S.A. 2A:58C–3(a)(2) (emphasis added).

Applicable case law also prohibits the court from introducing to the jury the principle of assumption of risk as a defense to a plaintiff's strict product liability claim stemming from an injury due to a defective product used in a workplace setting. *See Johansen v. Makita USA, Inc.*, 128 N.J. 86, 607 A.2d 637, 642 (1992) (even when plaintiff with actual knowledge of danger presented by defective product knowingly and voluntarily encounters that risk, such conduct cannot serve as basis for defense); *Grier v. Cochran W. Corp.*, 308 N.J.Super. 308, 705 A.2d 1262, 1269 (1998) ("[P]laintiff who sustains an injury from a defective product in a work setting will not have his or recovery diminished under comparative negligence principles for having allegedly encountered a known risk.").

In the case *sub judice*, the trial court improperly instructed the jury on the doctrines of contributory and comparative negligence and assumption of risk. The trial court instructed the jury, in part, as follows:

> I will briefly define for you negligence. There is a question on the jury verdict form that asks you to determine whether the plaintiff was negligent. Whether his negligence was an intervening cause or the proximal cause of his injuries. The legal term negligence, otherwise known as carelessness, means not using the ordinary care reasonably prudent people would use in a given situation. A negligent conduct may be an act or an omission or a failure to act when there's a duty to do so. Negligence is failing to do something reasonably careful people would do, or doing something reasonably careful people would not do. You must determine how reasonably careful people would act under the circumstances in this case.

> Ordinary care is not an absolute term, but a relative one. Ordinary care is what reasonably careful people would use in a given situation. People must use ordinary care not only to protect themselves, their property and others, but also to avoid injury to others. What constitutes ordinary care varies with the existing particular circumstances and condition. The amount of care required by the law must be in keeping with the degree of danger involved.

> . . .

The defendant contends that the plaintiff was at fault for the happening of this accident. The defendant must prove that the plaintiff voluntarily, unreasonably proceeded to encounter a known danger and that such action was a proximal cause of the accident. The mere failure to discover a defect in the product or to guard against a possibility of the existence is not a defense for the defendant. In other words, the defendant must prove that the plaintiff had actual knowledge of the particular danger ruled by his conduct and knowingly and voluntarily encountered that risk to win on this defense.

This is comparative negligence. If you find that both the plaintiff and the defendant were at fault and proximally caused the accident, then you must compare their negligent conduct in terms of percentages ... you will attribute to each of them that percentage that you find describes or measures his or its contribution to the happening of the accident.

N.T. Trial, 3/31/09, at 22–23; 48–49.

To justify its instructions to the jury, the trial court reasoned that Lewis had a "meaningful choice to perform the work in a safe manner, and that he had actual knowledge of the danger posed by the product." Trial Court Opinion, 12/24/09, at 19. We disagree.

The trial court erred by introducing to the jury the principles of contributory and comparative negligence and assumption of risk because Lewis was injured at his workplace while performing pole top breaker maintenance using Precision Cleaner as part of his assigned task as a utility worker. Lewis had no choice but to use Precision Cleaner pursuant to the work order, which directed its use. We decline to distinguish between a factory, construction, or utility worker injured using an allegedly defective product assigned to complete a work task. The allegedly defective workplace product may be a heavy piece of industrial machinery, a hand-held saw, a can of aerosol solution, or "other equipment used in the workplace." N.J.S.A. 2A:58C–3(a)(2). The workplace may be inside a factory, or outside atop a utility pole. The trial court's instructions contravened binding New Jersey case law. Therein, the courts have liberally applied the principle that workers injured on the job have no "meaningful choice" and are protected from the doctrines of assumption of risk and contributory and comparative negligence in similar strict product liability actions. *See Cavanaugh, supra; Ramos, supra; Fabian, supra; Mettinger, supra; Congiusti, supra; Tirrell, supra.*

Furthermore, we disagree with the trial court's conclusion that the evidence presented at trial indicated that Lewis somehow voluntarily encountered a known risk. The evidence presented at trial indicated that Lewis stepped up inside his bucket to extend his body to clean the switch using Precision Cleaner and touched the uninsulated metal tie-rod. Such conduct, however, is more appropriately characterized as "mere carelessness or inadvertence," which cannot relieve a manufacturer of liability in a strict product liability action. *See Johansen v. Makita USA, Inc.,* 128 N.J. 86, 607 A.2d 637, 641 (1992) *citing Cepeda v. Cumberland Eng'g Co.,* 76 N.J. 152, 386 A.2d 816, 832 (1978). Having concluded that Lewis did not have a "meaningful choice" whether to use Precision Cleaner, we conclude the trial court committed reversible error by instructing the jury on the principles of comparative and contributory negligence and assumption of risk.

▉ Next, Lewis contends the trial court erred by failing to limit the jury's consideration of his conduct in determining

whether Precision Cleaner was designed defectively. Appellant's Brief, at 30. Specifically, Lewis argues that the trial court failed to instruct the jury that Lewis's conduct could *only* be considered when determining the issue of causation. We agree.

■■ In a strict product liability action, a jury may consider evidence of plaintiff's conduct on the issue of causation. *Johansen v. Makita USA, Inc.*, 128 N.J. 86, 607 A.2d 637, 643 (1992). Limiting instructions are, therefore, critical to clarify for the jury the proper purpose of such evidence. This is so even where the jury finds that the product was not defective and does not reach the issue of causation. *Id.* at 640. The jury's focus in determining whether a product is designed defectively should be squarely on the condition of the product, and not the plaintiff's use of the product. *Id.* at 642.

Here, the trial judge instructed the jury on the risk-utility analysis in determining whether Precision Cleaner was designed defectively. The trial judge instructed the jury as follows:

> [Y]ou must consider and weigh the following facts: one, the usefulness and benefit of the product as it was designed to the user and the public as a whole. Was there a need that this product be designed in this specific manner? Two, the safety aspects of the product. That is, the likelihood or risk that the product as designed would cause injuries and the probable seriousness of any injury which could have or should have been anticipated through the use of the product. Three, was the substitute design for this product feasible and practical? Four, the ability of the defendant to eliminate the unsafe character of the product without impairing its usefulness or making it too expensive to maintain its utility. Five, the ability of foreseeable

use[r]s to avoid danger by the exercise of care and use of the product. Six, the foreseeable user's awareness of the danger inherent in the product and their avoidability because of the general public's knowledge of the obvious condition of the product or of the existence of suitable warnings or instructions.

> In applying the risk utility factors remember that a product may not be considered reasonably safe unless the risks have been reduced to the greatest extent possible consistent with the product's continued utility. That is, without impairing its usefulness and without making it too expensive for it to be reasonably marketable.

N.T. Trial, 12/24/09, 37–39. The fifth factor above asks the jury to consider the conduct of the foreseeable user. *Johansen* makes clear that the focus is on an "average user," and not the particular plaintiff. Accordingly,

> [A]n instruction that the plaintiff's conduct not be considered in the context of the risk-utility analysis is essential. Without it, a jury might find that a product, although improperly designed, is not defective because the plaintiff could have avoided the danger posed by the product through the exercise of due care. Put differently, a jury not properly instructed might inadvertently compare a plaintiff's and defendant's fault in determining whether a product is defectively designed.

*Johansen*, 607 A.2d at 645; *see also Ladner v. Mercedes–Benz of North America*, 266 N.J.Super. 481, 630 A.2d 308, 313 (1993) ("Without that [cautionary instruction], the jury was free to reason that plaintiff was a foreseeable user; the standard of care applied to her; she violated the standard; and she would not have

been injured had she not done so: ergo, the [product's] design was not defective.").[7]

Here, like *Johansen*, the risk that the omission of limiting instructions misled or confused the jury in its determination of whether the product was designed defectively was great. Although the trial court properly instructed the jury on the risk-utility factors, it failed to provide any limiting instructions. The trial court failed to explain to the jury that Lewis's conduct was not relevant to its application of the fifth factor of the risk-utility analysis. The trial court also failed to properly instruct the jury that evidence of Lewis's conduct was relevant *only* to the issue of causation, even after being given the opportunity to correct the error upon plaintiff's counsel's objection. *See* N.T. Trial, 3/31/09, at 58. These instructions were critical to ensure the jury correctly understood the proper scope within which to consider evidence of Lewis's conduct. Namely, that the jury understood that the risk-utility analysis contemplates an "average user" of the product and that Lewis's conduct was relevant only to the issue of causation. *Johansen*, at 645.

Indeed, the potential for jury confusion was further heightened by defense counsel's repeated efforts, throughout trial, to highlight Lewis's conduct in using the product.[8] During opening statements, defense counsel stated that Lewis's conduct caused his injuries. Specifically, defense counsel stated that Lewis either: stepped up inside his bucket causing him to lose his

insulation, failed to properly insulate his bucket, touched the metal tie rod, touched the metal can of Precision Cleaner to a piece of electrified equipment, or removed his safety gloves. *See* N.T. Trial, 3/17/09, at 46–56. The defense's expert referenced these same causes, and during closing statements, defense counsel made reference to each of them again. *See* N.T. Trial, 3/27/09, at 9–16; N.T. Trial, 3/30/09, at 41–47, 54–56.

While this evidence could have been properly considered by the jury in determining the issue of causation, at the close of trial the court was required to ensure that the jury understood the proper purpose of such evidence. An instruction not to consider Lewis's conduct when determining whether Precision Cleaner was defective under the risk-utility analysis was critical to the jury's ability to separate the issue of design defect from the issue of causation. *Johansen, supra.* Ensuring that the jury did not conflate the two issues is critical in a case such as this where the jury must first determine whether the product was designed defectively before determining whether the defective product caused plaintiff's injuries. *Jurado, supra.* Here, like *Johansen*, we conclude the trial court committed reversible error in failing to instruct the jury on the limited role evidence of Lewis's conduct played in determining whether Precision Cleaner was designed defectively. The trial court should have instructed the jury that evidence of Lewis's conduct was

---

7. In *Johansen*, the New Jersey Supreme Court held that the trial court committed plain error in failing to instruct the jury on the limited relevance of plaintiff's conduct in using the product. The court reversed and remanded for a new trial. Likewise, in *Ladner*, the Superior Court of New Jersey, Appellate Division, concluded that the trial court's failure to instruct the jury not to consider plaintiff's conduct when determining design defect under a risk-utility analysis constituted revers-

ible error and ordered a new trial. *Ladner*, at 314.

8. *See Johansen*, 607 A.2d at 645 (danger jury might improperly focus on plaintiff's behavior in deciding the issue of product defect was "especially acute" because throughout trial defendants emphasized plaintiff's lack of due care in using the product).

neither a defense to his strict product liability action nor relevant to the jury's determination of whether the product was designed defectively under the risk-utility analysis.

■ CRC counters by positing that even if the jury had been improperly instructed any error was harmless because the jury ended deliberations after finding that the product was not defectively designed and the jury, therefore, never reached the issue of causation.[9] Appellee's Brief, at 41. We disagree and find this self-serving argument unavailing because it ignores the fundamental principle that a jury must determine the issue of design defect without considering the specific conduct of the plaintiff. *Johansen, supra.* Such conduct is irrelevant to the jury's determination of whether a product was designed defectively when the product was *originally designed* by the manufacturer some time before the product reached the hands of the particular plaintiff. That the jury determined the product was not designed defectively does not alone relieve our concern that the jury confused the two issues. This is because the jury likely considered Lewis's use of the product when it determined whether the product was designed defectively under the risk-utility analysis.

■ By charging the jury on the principles of comparative and contributory negligence and assumption of risk and by failing to limit the jury's consideration of Lewis's conduct, the trial court abused its discretion. It is only when "the charge as a whole is inadequate or not clear or has a tendency to mislead or confuse rather than clarify a material issue" that error in a charge will be found to be a sufficient basis

for the award of a new trial. *Motts, supra.* Our review of the entire record indicates that the trial court's errors created the real danger that the jury improperly considered Lewis's conduct in determining whether the product was designed defectively. We are, therefore, compelled to conclude that the trial court's abuse of discretion was prejudicial and likely affected the outcome of the case. *Motts, supra; Ferrer, supra; Tindall, supra.*

Judgment reversed. Case remanded for a new trial. Jurisdiction relinquished.

ALLEN, J., files a Dissenting Opinion.

DISSENTING OPINION BY ALLEN, J.:

I respectfully dissent. In this products liability action, Appellant Sterling Lewis, plaintiff below, appeals from the judgment entered in favor of defendant-manufacturer, CRC Industries, Inc ("CRC"). Appellant alleged that CRC manufactured a defective aerosol spray, PF Precision Cleaner ("Precision Cleaner"). Appellant used Precision Cleaner to clean electrical switches that were located at the top of a utility pole, and he was electrocuted. Following trial, a jury found that Precision Cleaner was not defective in its design.

Upon review of the record and applicable case law, I conclude that Appellant's issues on appeal lack merit. To support my position, I rely upon the thorough and detailed analysis of the learned trial judge, the Honorable Nitza I. Quinones Alejandro, in her Pa.R.A.P. 1925(a) opinion. Below, I summarize the major points contained in Judge Alejandro's Pa.R.A.P. 1925(a) opinion, adding only brief commentary to supplement her analysis.

---

9. The trial court expressed the identical argument in defense of its jury instructions. *See*

Trial Court Opinion, 12/24/09, at 20.

First, the trial judge did not err in allowing CRC to introduce evidence of Appellant's conduct to establish that Appellant's unreasonable behavior was the sole, proximate cause of his injury.

Here, CRC introduced evidence that: (1) Appellant read the warnings on the Precision Cleaner can and knew that the spray conducted electricity and should not be applied to equipment that was energized; (2) Appellant broke his insulation protection when he climbed the step inside the protective bucket and exposed parts of his body that would otherwise be protected by the bucket; (3) Appellant knowingly sprayed Precision Cleaner on a charged electrical switch; (4) Appellant removed his protective work gear, which was required by his employer and would have prevented his injuries; and (5) a co-worker of Appellant warned Appellant to reposition himself into a more safe place shortly before Appellant cleaned the energized switch. Trial Court Opinion (T.C.O.), 12/24/09, at 19–20; 3, 12–13, 17. I agree with the trial judge that this evidence was relevant and admissible to prove that Appellant's unreasonable use of Precision Cleaner was the sole, proximate cause of his injuries. *See Johansen v. Makita USA, Inc.*, 128 N.J. 86, 607 A.2d 637, 646 (1992) ("Such evidence could have been considered . . . in determining whether the specific manner in which plaintiff had operated the saw had been the sole cause of the accident.").

Second, Appellant claims that the trial judge erred in instructing the jury on the legal principles of comparative negligence and superseding cause. Brief for Appellant at 42–48, 51–54. Even if the trial judge erred in instructing the jury on comparative negligence and superseding cause, the error(s) were harmless because the jury found that Precision Cleaner was not defective in its design. As such, the jury never reached the issues of comparative negligence and superseding cause, and any error with regard to these charges would not have affected the verdict. *Harkins v. Calumet Realty Co.*, 418 Pa.Super. 405, 614 A.2d 699, 707 (1992) ("Appellant's fourth argument is that the trial court erred in charging the jury on superceding cause. Appellant is entitled to no relief, however, because the jury never reached the issue of superceding cause. The jury found that the product was not defective."); *Robinson v. Philadelphia*, 329 Pa.Super. 139, 478 A.2d 1, 5 (1984) (finding harmless error where the defendant improper admitted evidence concerning causation and plaintiff's contributory negligence where the jury never decided these issues because it found that the defendant was not negligent).

Third, Appellant complains that the trial judge erred in failing to issue a limiting instruction to the jury informing them that they may not consider his negligent conduct when assessing factors 5 and 6 of the risk utility test. Brief for Appellant at 30–31. I find this issue waived due to Appellant's failure to affirmatively request a limiting instruction during trial.

Here, prior to the trial court's charge to the jury, Appellant did not submit a proposed limiting instruction informing the jury that they may not consider Appellant's negligence when determining liability. Although Appellant generally took exception to the trial court's instruction on comparative negligence immediately after the jury was charged and before it deliberated, Appellant never affirmatively requested that the trial court issue an independent instruction limiting the jury's consideration of Appellant's conduct.[1] As

---

1. Indeed, an examination of Appellant's mo- tion *in limine,* the trial court's charging con-

such, Appellant's assertion that the trial court erred in failing to issue a limiting instruction is waived, because Appellant did not specifically submit or request a proposed limiting instruction during the proceedings below. *Vernon v. Stash,* 367 Pa.Super. 36, 532 A.2d 441 (1987) ("An assignment of error that the trial court failed to give a specific instruction will not be considered unless it affirmatively appears from the record that a request for such an instruction was made [and] that it was denied by the trial court[.]").[2]

Fourth, the trial judge did not err in failing to instruct the jury on Appellant's claim that Precision Cleaner contained a manufacturing defect. Quite simply, Appellant failed to adduce any competent evidence that would permit the jury to draw an inference that Precision Cleaner deviated from its original design. T.C.O., 12/24/09, at 21–24. I note that CRC's representations regarding Precision Cleaner's performance capabilities do not amount to evidence of Precision Cleaner's actual, scientific design. *See* Brief for Appellant at 19–20.

Fifth, the trial judge did not err in failing to provide a more elaborate charge on the third element of the risk-utility test. Brief for Appellant at 26–29. Indeed, the alleged omission would be redundant of the charge that the trial judge provided; even with the alleged omission, the charge

clearly and accurately conveyed the law to the jury, instructing them to consider whether the alternative design submitted by Appellant was feasible and practical. T.C.O., 12/24/09, at 32–33. Consequently, I discern no reversible error on the part of the trial judge.

For these reasons, and relying upon Judge Alejandro's Pa.R.A.P. 1925(a) opinion, I respectfully dissent. I would affirm the judgment entered in favor of CRC.

ference, and Appellant's exceptions to the charges indicate that Appellant merely requested that the comparative negligence charge be used only to explain the concept of sole, proximate causation and not proportional fault or general liability. R.R. at 323–34; 2169; 2171–72; 2302. At no time did Appellant specifically request that the trial court issue a limiting instruction with regard to his negligent conduct and whether Precision Cleaner was defective.

**2.** I note that New Jersey, unlike Pennsylvania, invokes the plain error doctrine to review

issues on appeal that were not properly objected to at the time of trial. *In re Stern,* 11 N.J. 584, 95 A.2d 593 (1953). Although the trial court was obligated to apply the substantive law of New Jersey, the parties must abide by Pennsylvania's procedural rules, which include the Pennsylvania Rules of Evidence and Rules of Civil Procedure. *See Wilson v. Transp. Ins. Co.,* 889 A.2d 563, 571 (Pa.Super.2005). Therefore, this Court is compelled to apply Pennsylvania's rules regarding waiver and our standard of review for addressing appellate issues.