J-A01038-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JULIEN DEMOINERIE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EMBALL'ISO, INC. | : | |
| | : | |
| Appellant | : | No. 1238 EDA 2018 |

Appeal from the Judgment Entered March 28, 2018
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  April Term, 2016, No. 03190

BEFORE:  OTT, J., STABILE, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED MAY 14, 2019**

Emball'Iso, Inc., appeals from the judgment entered in favor of Julien Demoinerie on his negligent misrepresentation claim. Emball'Iso argues the court erred in denying its motions for summary judgment, a directed verdict, or judgment notwithstanding the verdict ("JNOV"), in denying its request for jury instructions, in precluding a witness's testimony, and in denying its request for a remittitur of the jury award. We affirm.

The trial court recounted the facts as follows:

Plaintiff Julien Demoinerie . . . is a native of France and a French Citizen. Defendant Emball'Iso, Inc. . . . is a manufacturing company headquartered in France with facilities in many countries. [Demoinerie] began working for [Emball'Iso] at its Shanghai, China facility in 2010, eventually becoming General Manager. While in China, [Demoinerie] married a Chinese citizen and the couple had a daughter.

In May 2014, [Emball'Iso]'s CEO/President, Pierre Casoli ("Casoli") approached [Demoinerie] about moving to the United States to work in a new facility in Philadelphia. [Demoinerie]

expressed an interest in serving as Plant Manager. On June 10, 2014, [Demoinerie] and Casoli executed an agreement ("Production Manager Agreement") under the terms of which [Demoinerie] would instead work as the Production Manager of the Philadelphia facility, reporting directly to Casoli. Under the terms of the Production Manager Agreement, [Demoinerie] would receive an annual salary of $100,000. In the event of termination, [Demoinerie] would be paid two months' salary. The effective date of the Production Manager Agreement was August 15, 2014. Prior to signing the Production Manager Agreement, [Demoinerie] was instructed to train a replacement and resign his position in Shanghai.

[Demoinerie] expressed his concern about working with Vice President Ronald Stern ("Stern") in the Philadelphia facility before signing the Production Manager Agreement. Casoli assured him they would serve as a "duality" with neither being subordinate to the other. [Demoinerie] testified that Casoli appealed to his commitment to the company and Casoli.

On August 12, 2014, prior to the effective date of the Production Manager Agreement and before [Demoinerie] moved to Philadelphia, [Emball'Iso] petitioned the United States government for a visa to permit [Demoinerie] to work in the United States. On the visa [petition], [Emball'Iso] represented that it wished to extend an offer of employment to [Demoinerie] as "Plant Manager" of its Philadelphia facility, reporting directly to Vice President [Stern]. The visa petition stated [Demoinerie]'s intended dates of employment as August 11, 2014 to August 11, 2017.

[[Demoinerie] reviewed a draft of the visa [petition] prior to its submission and was concerned about the change in reporting structure.] [Based on the visa petition, it was [Demoinerie]'s understanding that, as Plant Manager, he would have "full authority for plant management" and be employed in that position for three years.]

On October 27, 2014, U.S. Citizenship and Immigration Services issued an Approval Notice to [Emball'Iso]. On November 7, 2014, the United States issued an L1-A Visa to [Demoinerie] with an expiration date of November 5, 2019. Under the terms of the visa, [Demoinerie] could only work in the United States in a management position for a company which was at least 50% French-owned.

[Despite [Demoinerie]'s reservations about reporting to Stern, he moved to the United States; he had already hired and trained his replacement at the China facility.] [Demoinerie] arrived in the United States on November 13, 2014 and began work at the Philadelphia facility on November 17, 2014. The professional relationship between [Demoinerie] and Stern quickly became strained. [Demoinerie] testified that Stern raised his voice at [Demoinerie] in front of employees and gave instructions to employees that contradicted [Demoinerie]. Stern also hired and promoted employees without notifying [Demoinerie]. Casoli denied [Demoinerie]'s request to change the reporting structure.

On February 23, 2015, Casoli advised [Demoinerie], in person, that he was terminated. [Demoinerie] was presented with two termination letters and instructed to choose between them. The termination without cause letter, which identified [Demoinerie] as Production Manager of the Philadelphia facility, included a general release and four months' severance pay. The second letter, which specified [Demoinerie] was being terminated as the Production Manager with cause, stated that [Demoinerie], committed willful misconduct including sabotage, self-dealing, and insubordination. There was no provision for severance pay. [Demoinerie] testified that he refused to sign either letter because (a) the Production Manager Agreement never went into effect and (b) he was not the Production Manager of the Philadelphia Facility. [Demoinerie]'s last day of employment was February 26, 2015.

After his employment terminated, [Demoinerie]'s salary was transmitted by wire to his bank account for two months. [Demoinerie] testified that he believed that he was being compensated as Plant Manager and not pursuant to the Production Manager Agreement because he never worked as a Production Manager. [Demoinerie] could not find employment that satisfied the terms of his visa and returned to France to seek employment.

Trial Court Opinion, filed July 24, 2018, at 1-4 (reordered; citations to notes of testimony and exhibits omitted).

Demoinerie filed suit against Emball'Iso. Demoinerie alleged that Emball'Iso had engaged him in employment as Plant Manager; Emball'Iso assisted him in securing a visa; Demoinerie left China to begin working in

- 3 -

Philadelphia; and Emball'Iso abruptly terminated Demoinerie's employment, leaving him stranded in the United States with limited job prospects. On these allegations, Demoinerie brought two claims: Breach of Implied Contract, and Negligent Misrepresentation.

Following a trial, a jury found (1) the Production Manager Agreement did not govern Demoinerie's employment with Emball'Iso, (2) there was no implied contract between the parties, (3) Emball'Iso negligently misrepresented a material fact to Demoinerie, (4) Demoinerie relied on Emball'Iso's misrepresentation when deciding to accept the position and move to the United States, and (5) Demoinerie suffered harm as a result of his reliance on the misrepresentation. The jury awarded Demoinerie $675,000 on the negligent misrepresentation claim. Emball'Iso filed a Motion for Post-Trial Relief, which the court denied.

Emball'Iso thereafter filed a notice of appeal, and presents the following issues:

> A. Whether the [t]rial [c]ourt erred in denying Emball'Iso's Motion for Summary Judgment, Motion for Directed Verdict, and Motion for Judgment Notwithstanding the Verdict because the employment relationship between Demoinerie [a]nd Emball'Iso was governed by a written Employment Agreement.
>
> B. Whether the [t]rial [c]ourt erred in denying Emball'Iso's Motion for Summary Judgment, Motion for Directed Verdict, and Motion for Judgment Notwithstanding the Verdict as the negligent misrepresentation claim is barred by the [g]ist of the [a]ction [d]octrine.
>
> C. Whether the [t]rial [c]ourt erred in [de]nying Emball'Iso's Motion for Summary Judgement, Motion for a Directed Verdict, and Motion for Judgment Notwithstanding the Verdict because the

[n]egligent [m]isrepresentation claim failed as a matter of law where there was no competent evidence of any misrepresentation of material fact knowingly made by employer that the employee relied upon to his detriment.

D. Whether the trial court erred in denying Emball'Iso's Motion for Summary Judgment, Motion for Directed Verdict, and Motion for Judgment Notwithstanding the Verdict because the [n]egligent [m]isrepresentation claim failed as a matter of law where there was no competent evidence that [e]mployee suffered any harm as a result of the alleged misrepresentation.

E. Whether the [t]rial [c]ourt erred in denying Emball'Iso's request to instruct the jury on the concept of contract ratification through the acceptance of benefits.

F. Whether the [t]rial [c]ourt abused its discretion in prohibiting Emball'Iso from presenting the testimony of Jerry Singleton.

G. Whether the [t]rial [c]ourt erred in [d]enying [r]emittitur on the [j]ury's [a]ward [as it] was not supported by the evidence and substantially deviated from what can be considered reasonable compensation.

Emball'Iso's Br. at 8-9 (responses below omitted)

## A. The Production Manager Agreement

Emball'Iso first argues that the court erred in denying its Motion for Summary Judgment, Motion for Directed Verdict, and Motion for Judgment Notwithstanding the Verdict ("JNOV"), because, as a matter of law, the Production Manager Agreement governed the terms of Demoinerie's employment.

Summary judgment is appropriate when, taking the evidence in the light most favorable to the non-moving party, there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. ***Am. S. Ins. Co. v. Halbert***, --- A.3d ----, 2019 PA Super 15 (Jan. 17,

2019). "Whether there are no genuine issues as to any material fact presents a question of law, and therefore, our standard of review is *de novo* and our scope of review plenary." ***Id.*** (citation omitted).

In contrast, entry of a directed verdict or JNOV is appropriate when, taking the evidence in the light most favorable to the non-moving party, either the movant is entitled to judgment as a matter of law, or "no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant." ***Hall v. Episcopal Long Term Care***, 54 A.3d 381, 395 (Pa.Super. 2012) (citation omitted). While we exercise *de novo* review over questions of law, we will not substitute our judgement for that of the fact-finder where questions of credibility and weight of the evidence are concerned. ***Sutch v. Roxborough Mem'l Hosp.***, 151 A.3d 241, 250 (Pa.Super. 2016).

Emball'Iso argues that Demoinerie produced no evidence to establish that the parties rescinded the Production Manager Agreement. According to Emball'Iso, although Demoinerie's job title was changed from Production Manager to Plant Manager, and the reporting structure changed such that Demoinerie would report to Stern, these were *de minimis* modifications to the terms of the Agreement, and the evidence establishes that the parties mutually assented to the modifications and reaffirmed the Agreement through the following actions: Emball'Iso attached the Agreement as an exhibit to the visa petition, which Demoinerie signed; after he began work, Demoinerie referred to the Agreement as his "work agreement" in an e-mail to Casoli; and

Demoinerie accepted two months' pay after he was terminated, as the terms of the Agreement had provided.

Parties to a written contract may "show that it was subsequently abandoned in whole or in part, modified, changed or a new one substituted, either by writings or by words or by conduct or by all three." **Trustees of First Presbyterian Church of Pittsburgh v. Oliver-Tyrone Corp.**, 375 A.2d 193, 196 (Pa.Super. 1977). "Mutual assent to abandon the contract may be inferred from attending circumstances and the conduct of the parties." **Wathen v. Brown**, 189 A.2d 900, 902 (Pa.Super. 1963). Whether the parties have agreed to rescind or modify a contract is an issue for the factfinder. **Johnston v. Johnston**, 499 A.2d 1074, 1077 (Pa.Super. 1985).

Here, the parties presented conflicting evidence of whether the Production Manager Agreement had been modified or abandoned, and therefore entry of summary judgment or a directed verdict would have been inappropriate. Entry of JNOV would have likewise been inappropriate, as Demoinerie presented sufficient evidence for the jury to conclude that the Production Manger Agreement had been abandoned by the offer of the position as Plant Manager. Casoli testified that the Plant Manager position differed from the offer of employment under the Production Manager Agreement; Demoinerie testified that his business cards and e-mail signature identified him as the Plant Manager; and Demoinerie testified that he refused to sign either termination letter because he had never been Production Manager. We

therefore conclude the court did not abuse its discretion in deferring to the jury's verdict in favor of Demoinerie.

### B. The Gist of the Action Doctrine

Emball'Iso next argues that the court erred in denying its Motion for Summary Judgment, Motion for Directed Verdict, and Motion for JNOV because the gist of the action doctrine precluded Demoinerie from recovering under a theory of negligent misrepresentation. Emball'Iso argues that because Demoinerie's employment was controlled by the Production Manager Agreement, the doctrine barred him from bringing a tort action to seek recovery outside the provisions of the Agreement.

"[T]he question of whether the gist of the action doctrine applies is an issue of law subject to plenary review." **J.J. DeLuca Co. v. Toll Naval Assocs.**, 56 A.3d 402, 413 (Pa.Super. 2012). The gist of the action doctrine "ensure[s] that a party does not bring a tort claim for what is, in actuality, a claim for a breach of contract." **Bruno v. Erie Ins. Co.**, 106 A.3d 48, 60 (Pa. 2014). That is, when the parties' obligations are defined by the terms of the contract, the doctrine precludes a plaintiff from recasting a contract claim as a tort claim. **Hart v. Arnold**, 884 A.2d 316, 339 (Pa.Super. 2005).

We need not expound upon the doctrine further. The first question posed to the jury on the verdict sheet was whether the Production Manager Agreement governed the parties' relationship, and, as discussed above, the jury concluded that it did not. As there was no enforceable contract between the parties, the gist of the action doctrine did not bar Demoinerie's negligent

misrepresentation claim. Thus, the trial court did not err in denying Emball'Iso's motions for summary judgment, directed verdict, and JNOV made on this basis.

### C. The Negligent Misrepresentation Claim

Emball'Iso argues that the court erred in denying its Motion for Summary Judgment, Motion for Directed Verdict, and Motion for JNOV because Demoinerie failed to produce competent evidence to support his negligent misrepresentation claim. Emball'Iso first argues that the allegations in the Complaint do not establish Emball'Iso misrepresented a material fact that Demoinerie relied upon to his detriment. Emball'Iso argues that the Complaint alleged that Emball'Iso made misrepresentations in the visa petition which Demoinerie relied upon when leaving China. Emball'Iso maintains that because the visa petition post-dates Demoinerie's resignation from the China facility, the statements in the petition could not have caused his resignation. Emball'Iso further argues that it made no misrepresentations in the visa petition, as Demoinerie acknowledges that he was employed as Plant Manager, in accordance with the statements in the petition.

In addition, Emball'Iso argues the claim Demoinerie presented at trial to establish his negligent misrepresentation claim did not correspond to the allegations in the Complaint. In contrast, at trial, according to Emball'Iso, Demoinerie argued he relied upon misrepresentations Emball'Iso made in the Production Manager Agreement and suffered harm when he resigned from his position in China. These allegations of misrepresentations and reliance pre-

date the visa petition, which were the only misstatements referenced in the Complaint.

To prevail on claim of negligent misrepresentation, a plaintiff must prove: "(1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and; (4) which results in injury to a party acting in justifiable reliance on the misrepresentation." ***Bortz v. Noon***, 729 A.2d 555, 561 (Pa. 1999).

Emball'Iso's argument that the Complaint failed as a matter of law lacks merit. The Complaint alleges that Emball'Iso misrepresented, in the visa petition, that Demoinerie would serve as Plant Manager; that he would be employed for three years; that Demoinerie relied upon these misrepresentations when accepting the position and moving to the United States; and that he suffered damages thereafter. ***See*** Complaint, 4/28/16, at 6, ¶¶ 25-29. These allegations on their face state a claim for negligent misrepresentation.

Emball'Iso's argument that it was entitled to a directed verdict or JNOV likewise fails, as Demoinerie produced sufficient evidence to verify the allegations in the Complaint. The testimony established that after Emball'Iso made representations in the visa petition regarding the position of Plant Manager, Demoinerie "agreed to the new position [of Plant Manager] because . . . as Plant Manager, he would have 'full authority for plant management' and would be employed in that position for three years.'" Tr. Ct. Op. at 8

(quoting N.T.). Demoinerie testified that after he left China and began working in the Philadelphia facility, he was not given the authority of a Plant Manager as Emball'Iso had described that position in the visa petition; that he was terminated when he raised this issue to Casoli; and, as a result, he was not employed for the time-period Emball'Iso represented in the visa petition. Furthermore, the evidence established that while Demoinerie had resigned from his position in China prior to reading the visa petition, he did not move to the United States, on a restrictive visa, until after his consideration of and reliance upon the statements in the visa petition. We therefore conclude the court did not err in denying Emball'Iso's request to hold that Demoinerie failed to adduce sufficient evidence to support the allegations of negligent misrepresentation as pled in the Complaint.

Emball'Iso's claim that Demoinerie's argument at trial varied from the allegations in the Complaint is also meritless. While Demoinerie argued that Emball'Iso had initially misrepresented that it would employ Demoinerie as Production Manager, reporting to Casoli, he did so when arguing that the Production Manager Agreement had been abandoned and superseded by the offer of employment as Plant Manager, reporting to Stern. **See** N.T., 10/25/27, at 15-16. Specifically, in relation to the negligent misrepresentation claim, Demoinerie argued to the jury that he had relied upon Emball'Iso's statements in the visa petition that Demoinerie would be employed as Plant Manager reporting to Stern and that Emball'Iso intended to employ him for three years. **Id.** at 20-21. No relief is due.

- 11 -

**D. Proof that Misrepresentations Were Cause of Demoinerie's Injury**

Emball'Iso argues the court erred in denying its Motion for Summary Judgment, Motion for Directed Verdict, and Motion for JNOV because Demoinerie produced insufficient evidence to prove that the harm he suffered—loss of income—was due to the alleged misrepresentations. Emball'Iso argues that Demoinerie's employment in China was subject to termination at any time. It contends that he therefore could not have relied upon continuing to earn income in China, and was not harmed by resigning that position. Emball'Iso also argues that Demoinerie was given 60 days' notice of termination in Philadelphia, as he had requested when negotiating the Production Manager Agreement, and that he had acknowledged at trial that he had been terminated for cause.

We conclude that Demoinerie produced sufficient evidence to establish that his reliance upon the statements made by Emball'Iso in the visa petition injured him. While Demoinerie acknowledged that his employment with Emball'Iso was at will, and that Emball'Iso terminated him for cause, Demoinerie argued that he relied upon Emball'Iso's representations that it would employ him in accordance with the Plant Manager position, as described in the visa petition. Demoinerie testified that his employment as Plant Manager drastically varied from the job description in the visa petition, and argued that it was these differences that resulted in his swift termination and loss of income.

Moreover, as discussed above, in connection with the negligent misrepresentation claim, Demoinerie alleged his harm flowed from Emball'Iso's statements in the visa petition. Thus, his resignation from the position in China, which had already occurred by that time, was not a direct cause of harm. However, Demoinerie moved to the United States on a visa with restrictive job requirements based on the offer of the Plant Manager position as described in the visa petition and with his understanding that Emball'Iso intended to employ him in that position for an extended period of time, as Emball'Iso represented in the visa petition. Demoinerie testified that he was unable to find employment following his termination that would comport with the visa requirements. Thus, it was not beyond peradventure for the jury to conclude that Emball'Iso's statements inducing him to leave China contributed to his loss of income.

Finally, as the jury concluded the Production Manager Agreement did not govern Demoinerie's employment, his damages were not limited to 60 days' compensation, as the Agreement had provided. Emball'Iso's claim is without merit, and the trial court did not err in denying its motions for summary judgment, a directed verdict, or JNOV.

**E. Jury Instruction on Contract Ratification**

Emball'Iso next complains that the court erred in denying its request to instruct the jury on the concept of contract ratification through the acceptance of benefits. Emball'Iso maintains that the fact Demoinerie accepted two months' income after he was terminated, as was provided for in the Production

Manager Agreement, is proof that he assented to the terms of the Production Manager Agreement. Emball'Iso argues it accordingly requested that the court instruct the jury that "[a] party who accepts the benefits of a contract is considered to have accepted the terms of the contract. This means if an individual accepts the benefits under the terms of a contract, he cannot then claim he is not bound by the contract." Emball'Iso's Br. at 32.

Our standard of review is well settled:

Under Pennsylvania law, our standard of review when considering the adequacy of jury instructions in a civil case is to determine whether the trial court committed a clear abuse of discretion or error of law controlling the outcome of the case. It is only when the charge as a whole is inadequate or not clear or has a tendency to mislead or confuse rather than clarify a material issue that error in a charge will be found to be a sufficient basis for the award of a new trial.

*Lewis v. CRC Indus., Inc.*, 7 A.3d 841, 844 (Pa.Super. 2010) (quotation marks and citations omitted).

None of the authority cited by Emball'Iso persuades us that the trial court erred by denying the request for the proposed instruction. Demoinerie testified that he explicitly refused to sign the termination letter that provided him two month's salary according to the terms of the Production Manager Agreement, because that contract had already been abandoned. The proposed instruction would have misled the jury into thinking Demoinerie's failure to return the money, even after he specifically protested receiving it, standing alone, was dispositive proof that the parties had never abandoned the Agreement. Rather, the jury was permitted to consider **all** of the conduct of

the parties in determining whether the contract had been modified or abandoned. **Wathen**, 189 A.2d at 902.

Furthermore, when summarizing Emball'Iso's argument to the jury, the court specifically instructed the jury to consider that the Agreement required Emball'Iso to give Demoinerie 60 days' notice of termination.[1] Therefore, considering the charge as a whole, we conclude that the court did not abuse its discretion or err in denying Emball'Iso's request to charge the jury with the proposed instruction. **Lewis**, 7 A.3d at 844.

## F. The Testimony of Jerry Singleton

Emball'Iso argues the court erred in precluding the testimony of Jerry Singleton, an Emball'Iso employee who had worked under Demoinerie, who was offered to testify as to Demoinerie's poor job performance. According to Emball'Iso, Singleton's testimony would have proven Demoinerie caused his own termination and resulting loss of income.

_____

[1] The court instructed the jury as follows.

> The defendant contends that the parties negotiated a written employment agreement. Defendant contends that it made no misrepresentation to the plaintiff and the plaintiff was fully informed in making his decision to leave China and come to the United States and accept employment. Defendant's position is that the parties reached a written agreement that required both parties to give 60 days' notice to terminate the agreement. . . . Defendant also contends that it fully performed its obligations under the agreement and that the plaintiff received all the benefits that were due to the plaintiff under the contract.

N.T., 10/25/17, at 53.

"Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and we will not reverse the court's decision absent a clear abuse of discretion." *Keystone Dedicated Logistics, LLC v. JGB Enterprises, Inc.*, 77 A.3d 1, 11 (Pa.Super. 2013) (quotations and citations omitted).

We conclude the court did not abuse its discretion in precluding the testimony. Casoli testified that Emball'Iso had terminated Demoinerie's employment due to his poor job performance. Thus, Singleton's testimony would have been cumulative of that of Casoli, who testified to the actual reasons he terminated Demoinerie's employment. *See* Pa.R.E. 403 (court may preclude cumulative evidence). Furthermore, Demoinerie testified that his disagreements with Emball'Iso occurred because his position as Plant Manager was not as Emball'Iso had described in the visa petition. Therefore, Singleton's testimony would not have precluded the jury from finding that despite Demoinerie's failures as an employee, his termination was the result of his reliance on the representations made in the visa petition. Emball'Iso is due no relief.

### G. Motion for Remittitur

In its final argument, Emball'Iso complains the court erred in denying its motion for a remittitur. Emball'Iso contends the court's award of $675,000 equated to nearly seven years' salary, and this amount of damages was not supported by the evidence. Emball'Iso argues the evidence established that Demoinerie's salary was $100,000 per year, plus benefits; the visa petition

only contemplated 3 years' employment; and the issued visa only allowed him to remain in the country for 5 years.

"Remittitur is justified only in limited instances . . . where the verdict plainly is excessive, exorbitant, and beyond what the evidence warrants . . . or where the verdict resulted from partiality, prejudice, mistake, or corruption." *McManamon v. Washko*, 906 A.2d 1259, 1285 (Pa.Super. 2006) (citations omitted; alterations in original). "On appeal, we review whether the jury verdict so shocks the sense of justice such that the trial court should have granted remittitur as a matter of law." *Id.*

The court did not err in denying the motion for remittitur. Demoinerie testified that his annual salary, including benefits, amounted to $146,182. N.T., 10/23/17, at 69-70. Therefore, the jury's award of $675,000 equated to approximately four and one-half years' salary, including benefits. Demoinerie produced evidence that the visa petition contemplated three years of employment; that Casoli would have employed him longer than three years, if Demoinerie had been successful at the position; that the issued visa allowed for five years; and that after his termination, Demoinerie was unable to find alternative employment in the United States or France because of the restrictions on his visa and his lack of employment history in France. Thus, the jury's award was adequately supported by the evidence of Demoinerie's compensation and the amount of harm he sustained, and not so excessive as to shock the conscience.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>5/14/19</u>